The STATE OF MINNESOTA, The State of North Dakota, State of South Dakota et al., and State of Wisconsin,

v.

UNITED STATES STEEL CORPORATION; Paper, Calmenson & Co.; St. Paul Foundry & Manufacturing Co. (now The Maxson Corporation); St. Paul Structural Steel Company; Crown Iron Works Company; The Hustad Company.

Nos. 4–68 Civ. 37, 36, 38 and 41.

United States District Court,
D. Minnesota,
Fourth Division.

Jan. 27, 1970.

Erickson, Popham, Haik & Schnobrich by Wayne G. Popham and Bruce D. Willis, Minneapolis, Minn., and Roger E. Montgomery, Special Asst. Atty. Gen., St. Paul Minn., for plaintiff State of Minnesota.

Erickson, Popham, Haik & Schnobrich by Wayne G. Popham, Minneapolis, Minn., together with Robert A. Alphson, Special Asst. Atty. Gen., Grand Forks, N. D., for plaintiff State of North Dakota.

Erickson, Popham, Haik & Schnobrich by Wayne G. Popham, Minneapolis, Minn., for plaintiff State of South Dakota.

Theodore L. Priebe, Asst. Atty. Gen., Madison, Wis., for plaintiff State of Wisconsin.

Dominic B. King, Pittsburgh, Pa., for defendant United States Steel Corp.

Doherty, Rumble & Butler, by Frank M. Clayborne, St. Paul, Minn., for defendant Paper, Calmenson & Co.

Moore, Costello & Hart, by Robert A. Albrecht, St. Paul, Minn., for defendant The Maxson Corp.

Fredrikson, Byron & Colborn, by Jerome B. Pederson, Minneapolis, Minn., for defendant St. Paul Structural Steel Co.

Oscar A. Brecke, Minneapolis, Minn., for defendant Crown Iron Works.

Warner, Ratelle, Hennessy, Vander-Vort & Stasel, by Frank J. Warner, Minneapolis, Minn., for defendant The Hustad Co.

NEVILLE, District Judge.

■ Before the court for a ruling are defendants' motions (1) for a partial interlocutory summary judgment in their favor; (2) for an amendment of certain portions of this court's order and memorandum opinion of May 15, 1969, found in State of Minnesota v. United States Steel Corporation, 299 F.Supp. 596 (D.Minn.1969); and (3) for a certificate pursuant to 28 U.S.C. § 1292(b) permitting defendants to request an interlocutory appeal. The first motion is directed solely to the case brought by the plaintiff State of Minnesota, 4–68 Civ. 37. Defendants seek to eliminate from the alleged damage claim the amount paid by the State toward the cost of construction by various counties of highway bridges in those cases where the particular counties have not chosen nor elected timely to become a member of the class of plaintiffs on whose behalf the State of Minnesota brought suit. The detailed facts involved in the above captioned four treble damage antitrust actions are set forth with some particularity in State of Minnesota v. United States Steel Corp., 44 F.R.D. 559 (D.Minn.1968), and State of Minnesota v. United States Steel Corp., 299 F.Supp. 596 (D.Minn.1969), and need not be restated here. Briefly the States of Minnesota, Wisconsin, North Dakota and South Dakota allege that the six defendant steel companies conspired to fix the price of structural steel which, over a period of years, was purchased by the various plaintiffs and the numerous governmental subdivisions whom they represent as a class. In this court's first order, 44 F.R.D. 559, a time was established within which the various governmental subdivisions, including counties which so opted under Rule 23 of the Federal Rules of Civil Procedure, could become members of the class of plaintiffs. The difficulty now arises in that many Counties which built bridges using structural steel did not elect to become members of the class of plaintiffs. The fact is however that a substantial part, or perhaps in some cases all of the cost of such county bridges was paid from State of Minnesota funds, though title to the bridges and the duty to maintain the same rests with the individual counties. The State, to the extent that it paid or reimbursed the counties for such costs, has included such amount in its claim for damages. It is clear that any county which did not timely elect to become a member of the class cannot now attempt nor can the State on its behalf attempt to recover money paid from its own treasury and not reimbursed. Such is not involved here, the only question being whether the State can recover damages based on the amount that it and not the County expended for county bridges.

In the second above cited order and opinion of this court, 299 F.Supp. 596, defendants' motions were denied seeking to exclude from plaintiffs' damage claims the percentage of damage attributable to funds it received from the Federal Government by way of reimbursement under various Federal programs. The court held that the "reimbursement" defense, somwhat analogous to the "passing on" defense, was not available to defendants. In so ruling the court was aware that the statute of limitations had run on the Federal Government's right to pursue any damage claim against the six defendants and stated:

"The case at bar is similar to the *Electrical* cases. Neither the United States nor the contractors have sued defendants. There appears no likelihood that either of these parties will so sue and all parties to this lawsuit seem agreed that in any event such claims are barred by the Statute of Limitations. Thus there is here absolutely no fear of multiple litigation

or liability. * * * 299 F.Supp. at 608

The court's principal concern was and is that there should be no duplication or doubling up of claims so as unduly to penalize defendants. The court was not in 299 F.Supp. 596 confronted with the situation where both the reimburser and reimbursee were making claim against defendants for the same items. Had that been the case, a decision would have been necessary as to which entity could assert the claim.

Somewhat the reverse situation confronts the court on the present motion. The reimburser, the State of Minnesota is suing and the reimbursees, the various Counties, are not. Again, however, there is no duplication of claims since the various reimbursee Counties did not and cannot now become members of the class of plaintiffs and as to them the statute of limitations clearly has run. The danger the court adverted to in its opinion in 299 F.Supp. 596, and the absence of which was an underlying consideration in the decision there reached, is also absent here. As to those Counties who joined the class timely in these cases, the court will be vigilant to prevent any double recovery. The court does not believe it lies in the mouth of those who have conspired to break the law, (if in fact such is subsequently proven) to avoid their just deserts under the circumstances of this case on a technical defense as to who has standing to sue. If in fact the prices of steel were conspiratorially higher than otherwise they would have been, someone paid the higher price and it comes with poor grace to argue that the wrong party is suing, so long as there is no danger of duplicity of claims. The court sees nothing inconsistent between this ruling and its opinion in State of Minnesota v. United States Steel Corp., 299 F.Supp. 596 (D.Minn. 1969), and believes the philosophy displayed in Atlantic City Elec. Co. v. General Elec. Co., 226 F.Supp. 59 (S.D.

N.Y. 1964), quoted in such prior opinion at pp. 606–07 is apposite and persuasive here.

It can hardly be said that the State of Minnesota was not injured in its "business or property" within the meaning of 15 U.S.C. § 15, for had the prices not been higher, (if in fact they were conspiratorially raised) it would have advanced or "financed" lesser amounts or would have "bought" or received more for the funds it did expend, albeit the property so "bought" would have become the property of the County and not the State.

This court's previous order recognized the recently developed "target area" theory giving a private litigant standing to sue if he was within the target area of the illegal practices and "was not only hit, but was aimed at." It is indeed doubtful that the defendants in dealing with the Counties would not know that State of Minnesota aid was being given to the Counties and thus the State was "aimed at" and was within the "target area" approach as approved by the Eighth Circuit in Sanitary Milk Producers v. Bergjans Farm Dairy, Inc., 368 F.2d 679 (8th Cir. 1966).

Defendants' second motion, a request to strike from, or modify certain language in the court's memorandum opinion in 299 F.Supp. 596 is denied. If the defendants ultimately establish that the court inadvertently misstated a fact or opined on something not deemed germane, such can be cured at or during trial and will in any event be without prejudice to any state of facts actually shown by the evidence to exist.

In defendants' third motion the court has been requested to issue a certificate pursuant to 28 U.S.C. § 1292 (b) relating to an interlocutory appeal directed to the discretion of the Court of Appeals, said certificate to cover both the denial of partial summary judgment embodied in the instant order as well as the decision embodied in the court's

order and memorandum opinion of May 15, 1969 found in 299 F.Supp. 596. The court believes that both of these rulings involve controlling questions of law as to which there is substantial ground for difference of opinion and that a combined immediate appeal from these Orders may materially advance the ultimate termination of the litigation.

The court notes that the much cited cases of Hanover Shoe Inc. v. United Shoe Machine Co., 392 U.S. 481, 88 S.Ct. 2224, 20 L.Ed.2d 1231 (1968), and Atlantic City Elec. Co. v. General Elec. Co., 226 F.Supp. 59 (S.D.N.Y. 1964), both arose procedurally at an early stage, the latter on objections to interrogatories even as in the case at bar. It seems to the court therefore that it is not unusual that important and controlling questions of law often may be determined at this stage of the proceedings. The cases at bar are now approximately two years old and are at least apparently a year away from trial according to the discovery schedule established by counsel under the supervision of the court. Though originally eight cases were brought, four companion cases have been settled and dismissed. To date settlement efforts on the remaining four have not been fruitful, due in part perhaps to the belief by some of the parties that this court's orders are in error and may be reversed. If the court is in error, and is reversed, it will affect substantially the scope and amount of discovery. Thus it may be very helpful to have a final determination of the issues involved at an early date if the Court of Appeals, in its sound discretion, determines to pass on the questions presented. Further, the actual trial of these antitrust cases will be long and expensive and if the court's preliminary determination is in error, a second similarly lengthy trial will be necessary. Thus a prior determination of the two major issues hereinabove decided and contained in this court's May 15, 1969 order will be extremely valuable and helpful.